IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DIVISION OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| LAURA MORLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| SAGE-POPOVICH, INC., | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, Laura Morlock, by counsel, and for her Complaint against Defendant, Sage-Popovich, Inc. ("Sage-Popovich"), states and alleges the following:

## I. NATURE OF THE ACTION

1. Plaintiff, Laura Morlock brings this action pursuant to the Americans with Disabilities Act ("ADA") of 1990, as amended, 42 U.S.C. § 12101, *et seq.,* and the Family Medical Leave Act of 1993, 29 U.S.C. §2601 *et seq* ("FMLA") to remedy Defendant, Sage-Popovich's failure to accommodate and retaliation against Plaintiff within her employment. Plaintiff contends Sage-Popovich violated the ADA and the FMLA when it disciplined and ultimately terminated Plaintiff on September 19, 2018, after refusing to accommodate her and to engage in the interactive process after learning of Plaintiff's disability.

## II. THE PARTIES

2. Plaintiff, Laura Morlock, is a female citizen of the United States and resident of the State of Indiana.

3. Defendant, Sage-Popovich, is an Indiana corporation which maintains its principal office in Valparaiso, Indiana.

## III. JURISDICTION AND VENUE

4. Defendant is a "covered entity" as defined by 42 U.S.C § 12111(2).

5. Defendant is an "employer" as defined by 42 U.S.C § 12111(5).

6. At all relevant times, Plaintiff was an "employee" as defined by 42 U.S.C § 12111(4).

7. At all relevant times, Plaintiff was a "qualified individual" as defined by 42 U.S.C § 12111(8).

8. At all relevant times, Plaintiff had a "disability" as defined by 42 U.S.C § 12102(1).

9. This Court's jurisdiction over this matter is based upon a federal question pursuant to 28 U.S.C. § 1331.

10. Venue is properly placed in this district because the Defendant resides in and the events giving rise to this action occurred in the Northern District of Indiana, pursuant to 28 U.S.C § 1391(b).

## IV. ADMINISTRATIVE PROCEDURES

11. On or about March 29, 2019, Laura Morlock ("Laura") filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Sage-Popovich for its failure to provide reasonable accommodations in violation of the ADA, Charge Number 470-2018-04396 ("the Charge"). A copy of the Charge is attached hereto and incorporated herein by reference as **"Exhibit A."**

12. On or about October 24, 2019, Laura received a Notice of Right to Sue (the "Notice") from the EEOC for the Charge. A copy of the Notice is attached hereto and incorporated herein by reference as **"Exhibit B."**

13. Laura timely filed this Complaint against Sage-Popovich within ninety (90) days of receiving the Notice.

## V. FACTUAL STATEMENT OF THE CLAIM

14. Sage-Popovich hired Laura as an administrative assistant on or about September 18, 2017.

15. Laura's offer of employment included Laura's job duties as an administrative assistant and referenced her allowable time off per Sage-Popovich's employee handbook.

16. During Laura's employment, Laura requested time off according to Sage-Popovich's employee handbook. These requests and any other special requests for a modified schedule were approved in advance by Human Resources or the President, Nick Popovich.

17. From September 2017 to February 2018, Laura met or exceeded Sage-Popovich's reasonable expectations of performance as an administrative assistant.

18. In February 2018, Laura's title was changed to Executive Assistant; however, Laura's essential job functions did not change.

19. In February 2018, Laura began to suffer with extreme insomnia stemming from being the victim of stalking and domestic violence.

20. On February 8, 2018, Laura visited Meredith White, a Nurse Practitioner at Franciscan Physician Network, to provide treatment for her insomnia. Nurse Practitioner White wrote a note stating Laura has insomnia and, while Nurse Practitioner White was developing Laura's treatment, Laura should be granted a longer grace period for arriving to work.

21. Laura provided Sage-Popovich Nurse Practitioner White's letter as immediate notice of her insomnia and request for accommodation on the same day she received the note, February 8, 2018.

22. Since requesting a later start time as a reasonable accommodation, Laura had been arriving to work a few minutes late without reprimand. After honoring Laura's accommodation request for approximately two (2) months, Sage-Popovich undermined these efforts by attempting to stop accommodating Laura in April 2018.

23. On April 11, 2018, Laura received an instant message from Jaime Turley Perz, the General Counsel and Director of Human Resources ("HR") at Sage-Popovich. The message read:

> "Hi Laura! It has been brought to my attention that **<u>you are late almost everyday, but only by a few minutes</u>**, and were in fact on time today. I don't want you to take this the wrong way, because **<u>you are a very hard worker and it does not go unnoticed that you never complain, stay late often, and hardly ever take a lunch break</u>.** I simply wanted to touch base with you regarding this."

24. Laura responded to the General Counsel and Director of HR by reminding her that she suffers from insomnia as stated in the note she provided Sage-Popovich from Nurse Practitioner White. Laura further stated that although she was only a few minutes late on a regular day, she would still attempt to be more timely in her arrival, and that she hoped her arrival time would not affect her employment because she enjoyed her job.

25. As shown in Exhibit B, Sage-Popovich's General Counsel and Director of HR ended the Instant Message conversation with Laura by stating the following:

> "**<u>I honestly don't think it is a big deal on my end; especially since you do so much</u>,** but if you could **<u>try to be here closer to 8</u>**, that would be most appreciated <smiling face emoji> **<u>That way, I will never have to even address issue with Nick</u>** <smiling face emoji>"

26.     As of April 11, 2018, the President of Sage-Popovich, Nick Popovich, had not complained or noticed Laura, his Executive Assistant, had been arriving to work a few minutes after 8AM.

27.     After the April 11, 2018, instant messenger conversation, Laura continued to arrive to work the same times, approximately fifteen (15) minutes past 8:00AM on average, as she had still suffered from insomnia.

28.     In August 2018, Sage-Popovich began reprimanding Laura.

29.     August 29, 2018, Laura received a disciplinary discussion about her work performance from the General Counsel and Director of HR for allegedly not clocking out for lunch, obtaining too much overtime, and not getting enough work accomplished.  The General Counsel and Director of HR's alleged complaints were directly contrary to the praises she gave Laura via their instant message conversation.

30.     On September 12, 2018, Laura received a written warning from the General Counsel and Director of HR alleging Laura has trouble concentrating and that she arrives late to work.

31.     Laura had already informed the General Counsel and Director of HR twice (once in February 2018 and again in April 2018) of her insomnia and her request for a later arrival as a reasonable accommodation for her disability.

32.     Concerned about her job, Laura again attempted to address her insomnia by scheduling another medical evaluation at Franciscan Physicians Network.

33. Laura was seen by Dr. Ruolan Lori Pi on September 17, 2018. During this appointment, Laura was diagnosed with post-traumatic stress disorder ("PTSD") in addition to her insomnia.

34. That same day, September 17, 2018, Laura provided Sage-Popovich's General Counsel and Director of HR a note from Dr. Ruolan Lori Pi informing Sage-Popovich of her conditions, and requested documentation to apply for leave under the Family Medical Leave Act ("FMLA").

35. Upon Laura's request for leave under FMLA, Sage-Popovich's General Counsel and Director of HR told Laura Sage-Popovich does not have fifty (50) employees and therefore is not subject to the FMLA.

36. On September 17, 2018, Laura then requested to remove the marginal job functions, leaving only the essential job functions, while being treated for PTSD as an additional accommodation outside of a later start time. Sage-Popovich's General Counsel and Director of HR told Laura she would ask the President of Sage-Popovich and would get back with Laura.

37. No Sage-Popovich employee or representative discussed Laura's request for additional accommodation on or after September 17, 2018.

38. Sage-Popovich did not engage in interactive process after receiving Laura's request for accommodation on September 17, 2018, to determine the appropriate reasonable accommodation as required by the ADA and 29 C.F.R 1630.2(o)(3).

39. Laura continued to work at Sage-Popovich the next two days without any incident or any verbal or written discipline.

40. On September 19, 2018, Laura was terminated from Sage-Popovich because of her disabilities and Sage-Popovich's refusal to provide reasonable accommodations.

## VI. COUNT I - VIOLATION OF THE ADA, AS AMENDED: FAILURE TO ACCOMMODATE

41. The foregoing paragraphs are realleged and incorporated by reference herein.

42. At all relevant times to this action, Laura had insomnia and PTSD which were disabilities as defined by 42 U.S.C. § 12101(1)(A), (B) or (C).

43. Laura was capable of performing the essential functions of an administrative and executive assistant, with reasonable accommodation(s).

44. At all relevant times to this action, Laura was a "qualified individual with a disability" as defined in 42 U.S.C. § 12111(8).

45. Sage-Popovich knew of Laura's disabilities and of her requests for reasonable accommodation.

46. Sage-Popovich did not engage in the interactive process with Laura to attempt to find appropriate and reasonable accommodation(s) for her as required by the ADA and 29 C.F.R 1630.2(o)(3).

47. Sage-Popovich terminated Laura because of her disabilities.

48. Due to Sage-Popovich's willful and intentional violation of the ADA, Laura suffered adverse employment action when Sage-Popovich refused to provide reasonable accommodations, disciplined her based on her disabilities, and terminated her due to her disabilities without engaging in the interactive process. Due to Sage-Popovich's willful and intentional violation of the ADA, Laura continues to suffer financially and emotionally for which she is entitled to relief from Sage-Popovich.

## VII. COUNT II - VIOLATION OF THE FMLA: RETALIATION

49. The foregoing paragraphs are realleged and incorporated by reference herein.

50. At all relevant times to this action, Laura was an employee and Sage-Popovich was Laura's employer.

51. Laura exercised her right to request leave under the FMLA when she requested FMLA documents from Sage-Popovich.

52. Laura's request for leave under the FMLA was protected activity.

53. Sage-Popovich terminated Laura for exercising her right to request leave under the FMLA.

54. Sage-Popovich's decision to terminate Laura was substantially motivated by the fact that Laura exercised her rights under the FMLA.

55. Due to Sage-Popovich's willful and intentional violation of the FMLA, Laura suffered adverse employment action when Sage-Popovich terminated her in retaliation for her exercising her rights under the FMLA. Due to Sage-Popovich's willful and intentional violation of the FMLA, Laura continues to suffer financially and emotionally for which she is entitled to relief from Sage-Popovich.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the court award her:

(a) Compensatory damages in an amount reasonable to compensate her for damages suffered as a result of the discrimination;

(b) A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

(c) Exemplary and punitive damages in whatever amount she is found to be entitled;

(d) An award of pre- and post- judgment interest, costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(e) Other damages and further relief as deemed just.

Respectfully submitted,

/s/ Myra R. Reid
Peter J. Agostino　　　　　(10765-71)
Myra R. Reid　　　　　　　(35583-71)
ANDERSON, AGOSTINO & KELLER, P.C.
131 S. Taylor Street
South Bend, IN 46601
Telephone: (574) 288-1510
Facsimile: (574) 288-1650
E-mail: agostino@aaklaw.com
E-mail: reid@aaklaw.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury.

/s/ Myra R. Reid
Myra R. Reid　　　　(35583-71)